UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LIZA DAZELL, RANDY DAZELL,

                    Plaintiffs,

vs.                              Case No.  2:04-cv-98-FtM-29DNF

MICHAEL   CHERTOFF[1],   Secretary   of
Homeland Security, THELMA KESSLER,
BRINKER   INTERNATIONAL   INC.,   d/b/a
Chili's   Too   Restaurant,   a/k/a
Chili's Two Restaurant,

                    Defendants.
_____/


**OPINION AND ORDER**

_____This matter comes before the Court on Defendant's Motion to
Dismiss, or, in the Alternative, for Summary Judgment (Doc. #48),
filed on July 25, 2005.  Plaintiffs filed their Response on August
15, 2005.  (Doc. #54).  Because the parties have relied on
documents outside the pleadings, the Court is required to treat the
motion to dismiss as a motion for summary judgment.  Bost v.
Federal Express Corp., 372 F.3d 1233, 1237 (11th Cir. 2004) (citing
Property Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 604 (11th Cir.
1995)).  Therefore, the Court will deny the motion to dismiss but
consider the alternative motion for summary judgment.

_____

[1]Michael Chertoff, the current Secretary of Homeland Security,
is substituted for Tom Ridge pursuant to Fed. R. Cv. P. 25(d).

## I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000), cert. denied, 534 U.S. 815 (2001). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving

-2-

party.   Johnson v. Booker T. Washington Broad. Serv., Inc., 234
F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628,
630 (11th Cir. 1995).

## II.

This case turns on a legal issue, and the material undisputed
facts viewed in the light most favorable to plaintiffs are
straightforward.   Plaintiff Lisa Dazell is a Passenger Service
Agent ("PSA") for Delta Airlines at Southwest International Airport
("RSW") in Fort Myers, Florida.   On December 31, 2002, Mrs. Dazell
was assaulted by Delta Airlines passenger Thelma Kessler
("Kessler") immediately after Mrs. Dazell informed Kessler that
Kessler could not board the Delta flight because Kessler was
intoxicated.   At some time prior to the assault, Kessler had been
cleared through a passenger screening checkpoint at RSW and allowed
into the "sterile area"[2] of the airport.   The summary judgment
facts, viewed in the light most favorable to plaintiffs, establish
that Kessler was intoxicated while proceeding through the screening
checkpoint but complied with all screening requests and
obligations, and did nothing which would bar her from entry into
the sterile area.   It was in this sterile area where the assault
occurred.   Plaintiffs' suit against the United states by way of the

---

[2]"Sterile area" is defined in the regulations as "a portion of
an airport defined in the airport security program that provides
passengers access to boarding aircraft and to which the access
generally is controlled by TSA . . . through the screening of
persons and property."   49 C.F.R. § 1540.05.

Secretary of Homeland Security is brought pursuant to the Federal Tort Claims Act and sets forth a claim for negligence and a claim for loss of consortium.

### III.

The Federal Torts Claims Act was "designed to provide redress for ordinary torts recognized by state law."  Ochran v. United States, 273 F.3d 1315, 1317 (11th Cir. 2001)(internal quotation and citation omitted).  Under Florida law, which governs this claim, "[t]o state a claim for negligence, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages."  Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004)(quoting Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001).  Plaintiff Liza Dazell asserts a claim for negligence on the theory that the federal airport screeners let an intoxicated person past the screening checkpoint into the sterile area in violation of a duty not to do so.  (Doc. #1, ¶¶ 31-33).  The United States asserts that as a matter of law there was no such duty, and denies a breach of any duty if one is found to exist.

"The determination of the existence of a duty of care in a negligence action is a question of law."  Goldberg v. Florida Power & Light Co., 899 So. 2d 1105, 1110 (Fla. 2005).  A duty may arise from multiple sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a

duty arising from the general facts of the case." Goldberg, 899
So. 2d at 1110, quoting Clay Elec. Co-op., Inc. v. Johnson, 873
So.2d 1182, 1185 (Fla. 2003).  An independent duty of care,
however, will not arise from written agency protocols, procedures,
and manuals in the context of governmental tort litigation.
Pollock v. Florida Dep't of Highway Patrol, 882 So. 2d 928, 937
(Fla. 2004).  "If no duty of care is owed with respect to alleged
negligent conduct, then there is no governmental liability...."
Id. at 932 (citing Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla.
1989)).  Whether the United States has a duty to protect persons
within an airport sterile area from acts committed by intoxicated
persons who have been let through the screening checkpoint "turns
on whether the United States voluntarily undertook to do an act
that if not accomplished with due care might increase the risk of
harm to others or might result in harm to others due to their
reliance upon the undertaking confers a duty of reasonable care,
because it thereby creates a foreseeable zone of risk." Stone, 373
F.3d at 1130 (internal quotations and citations omitted).

The United States has clearly undertaken the obligation to
perform the security screening function at most United States
airports, including RSW.  On November 19, 2001, the United States
Congress enacted the Aviation and Transportation Security Act
("ATSA") to "improve aviation security...."  PL 107-71, 2001 §
1447.  The ATSA provided that the Under Secretary of Transportation
for Security (hereinafter the Government) "shall provide for the

-5-

screening of all passengers and property,..." that will be carried aboard an aircraft such as the one involved here. 49 U.S.C. § 44901(a). For flights and flight segments originating in the United States, "the screening shall take place before boarding and shall be carried out by a Federal Government employee..." [with exceptions not applicable here]. Id. This screening activity at airports in the United States "shall be supervised by uniformed Federal personnel of the Transportation Security Administration...." 49 U.S.C. § 44901(b). Additionally, the Government "shall order the deployment of law enforcement personnel authorized to carry firearms at each airport security screening location to ensure passenger safety and national security." 49 U.S.C. § 44901(g)(1). Each qualified airport in the United States must have an on-site Federal Security Manager who oversees the screening of passengers and property at the airport, 49 U.S.C. § 44933(a), (b), and the Government must establish a program for the hiring and training of security screening personnel. 49 U.S.C. § 44935(e).

The TSA promulgated regulations governing Civil Aviation Security, 49 CFR Part 1540, et seq. ("TSA Regulations"), which govern the security responsibilities of persons engaged in aviation-related activities, 49 C.F.R. § 1540.1. Among other obligations, passengers and other individuals and persons at an airport may not tamper or interfere with, or attempt to circumvent any airport security system or procedure; and may not enter or be

present in a secured area or sterile area without complying with the systems, measures and procedures applicable to control access to or presence or movement in those areas.   49 C.F.R. § 1540.105(a)(1),(2)[3].   More specifically, no person is allowed to enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the applicable screening procedures. 49 C.F.R. § 1540.107[4].  Additionally, no person may interfere with screening personnel in the performance of their screening duties. 49 C.F.R. § 1540.109[5].

While the Government is thus obligated to perform the airport screening function, and passengers and others are required to go through the screening checkpoint before entering a sterile area, the Court must determine the proper scope of the TSA screening

---

[3]"(a) No person may:
(1) Tamper or interfere with, compromise, modify, attempt to circumvent, or cause a person to tamper or interfere with, compromise, modify, or attempt to circumvent any security system, measure, or procedure implemented under this subchapter.
(2) Enter, or be present within, a secured area, AOA, SIDA or sterile area without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such areas."  49 C.F.R. § 1540.105(a)(1),(2).

[4]"No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property in accordance with the procedures being applied to control access to that area or aircraft under this subchapter."  49 C.F.R. § 1540.107.

[5]"No person may interfere with, assault, threaten, or intimidate screening personnel in the performance of their screening duties under this subchapter."  49 C.F.R. § 1540.109.

function in order to determine the existence or non-existence of the duty asserted by plaintiffs.   The TSA Regulations clearly define and limit the screening function: "Screening function means the inspection of individuals and property for weapons, explosives, and incendiaries."  49 C.F.R. § 1540.5.  This focused and limited objective of the screening function is reflected in the ATSA.  For example, the Government is required to proscribe regulations requiring an air carrier to refuse to transport a passenger "who does not consent to a search pursuant to § 44901(a) of this title establishing whether the passenger is carrying unlawfully a <u>dangerous weapon, explosive, or other destructive substance</u>" (emphasis added); or who does not consent to a search of the property for the same items.  49 U.S.C. § 44902(a)(1)-(2).  <u>See also</u> 49 U.S.C. § 44901(d),(e) (mandatory explosive detection systems).  The TSA Regulations generally prohibit the carrying of weapons, explosives or incendiaries.  49 C.F.R. § 1540.111(a).  Thus, the focus of the screening mandated by the ATSA is detecting and excluding certain types of dangerous items.  Indeed, the constitutionality of such airport screenings lies in large part because of the limited purpose of the search.  <u>E.g.</u>, <u>United States v. Marquez</u>, 410 F.3d 612 (9th Cir. 2005).  Where personal characteristics are relevant, they are limited to identifying persons such as terrorists and persons on the no-fly lists, 49 U.S.C. § 44903(j)(2), not simply the intoxicated.

The Court finds that the duty of the Government screeners to deny admittance to the sterile area is thus limited to persons who (1) fail to submit to screening and inspection, (2) fail to comply with the screening procedures or directions, (3) tamper or interfere with the screening function or screening personnel in the performance of screening duties, (4) carry weapons, explosives, or incendiaries, or (5) otherwise are violating state, local or federal law.  An intoxicated person like Kessler who does not fall within one of these categories[6] cannot be excluded from the sterile area by the TSA screeners.  While the air carrier need not allow such an intoxicated person to board an airplane[7], there are no regulatory provisions which would allow the TSA screeners to deny admittance of such a person to the sterile area.

At the pretrial conference plaintiffs' counsel conceded that there was no statute or regulation which established the duty plaintiffs seek to impose upon the Government.  Similarly, plaintiffs have not cited any judicial interpretations of the statutes or regulations, or any other judicial precedent, which

---

[6]Florida law does not make public intoxication unlawful, only disorderly intoxication.  Fla. Stat. § 856.011(1).  This requires proof not only of intoxication, but that the public safety is endangered.  State v. Holden, 299 So. 2d 8 (Fla. 1974.  This requirement is not satisfied in this case.  E.g., Jernigan v. State, 566 So. 2d 39 (Fla. 1st DCA 1990); Blake v. State, 433 So. 2d 611 (Fla. 1st DCA 1983).

[7]Subject to governmental regulations, an air carrier "may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."  49 U.S.C. § 44902(b).

support their claim that such a duty exists.  Thus, the first three sources of a duty identified in Goldberg, 899 So. 2d at 1110, are lacking in this case.

The final potential source of a duty identified in Goldberg is from the facts of the specific case.  Here, the facts of this case establishes no such duty.  Gloria Miller, a TSA security screener at RSW, encountered Kessler when Kessler was randomly selected for secondary screening at the Checkpoint to concourse B at RSW. Miller testified that while Kessler was "upset and crying" before the secondary screening commenced, Kessler was cooperative throughout all stages of the screening process.  (Doc. # 48, Exh. 2, ¶¶ 6-7).  Because Miller was then assigned to Gate B4 to conduct further screening, Miller informed her supervisor, Dwayne May, that, as a courtesy, she would escort Kessler to Gate B2 from where Kessler's flight would depart.  Miller then used a skycap wheelchair to push Kessler to Gate B2 where Miller told Kessler that Miller would be at a nearby gate and would check on Kessler periodically.  (Id., ¶ 10).

Because Kessler did not appear well, Mrs. Dazell approached Kessler and asked a series of questions, including (1) whether Kessler was on any medication; (2) was Kessler okay; (3) is there anything that Mrs. Dazell could do for Kessler; and (4) was Kessler in any pain.  (Doc. #48, Exh. 3, pp. 18-22).  During the initial conversation, Mrs. Dazell also discovered that Kessler consumed three or four drinks.  At that time, Mrs. Dazell concluded that

Kessler was intoxicated, but Mrs. Dazell did not think that Kessler was a threat to Mrs. Dazell. Otherwise, Mrs. Dazell would have immediately contacted the police. (Doc. #48, Exh. 3, pp. 25, 46-47). In following Delta Airlines' protocol, Mrs. Dazell informed her supervisor and the captain of the flight on which Kessler was scheduled to depart. The captain told Mrs. Dazell to deny Kessler boarding. (Doc. #48, Exh. 3, p. 28).

Before Mrs. Dazell returned to Kessler, Duane May, who accompanied Miller and Kessler to the gates, informed Mrs. Dazell that Kessler gave the TSA agents a hard time and that Kessler was drunk. May further inquired as to whether Mrs. Dazell would allow Kessler to board the aircraft for her flight. (Doc. #48, Exh. 3, p. 33).

Mrs. Dazell then approached Kessler and explained that Kessler would be denied boarding. In response, Kessler grabbed at Mrs. Dazell's abdomen area and refused to release Mrs. Dazell. (Doc. #48, Exh. 3, pp. 40-41). A TSA agent pulled Kessler off of Mrs. Dazell, and a law enforcement officer became involved at that time.

Plaintiffs claim that there is a genuine issue of material fact as to whether Kessler's conduct at the Checkpoint was "uncooperative and disruptive." Plaintiffs rely on Mrs. Dazell's testimony stating Duane May commented that Kessler gave the TSA agents "a hard time", that he thought Kessler was drunk, and that the TSA agents almost denied Kessler access to the sterile area. (Doc. #48, Exh. 3, p. 37). May neither conducted nor was present

for Kessler's screening process (Doc. #54, Exh. 2, p. 48), and did not recall making any such comment. (Doc. #54, Exh. 2, pp. 30, 50-51). Even viewing this evidence and all inferences in the light most favorable to plaintiffs, the evidence is undisputed that Kessler did not exhibit behavior which should have denied her access to the sterile area. A person "interferes" with screeners in the performance of their duties only by conduct which poses an actual hindrance to the accomplishment of the screening tasks. Rendon v. Transportation Security Admin., ____ F.3d ____, 2005 WL 2296220, at *4 (6th Cir. 2005). Kessler's conduct at the screening checkpoint was nowhere near this standard.[8]  Thus, the Court concludes that the facts of the case did not create a duty by the TSA screeners to deny Kessler access to the sterile area.

Since there was no legal duty for the TSA screeners to deny Kessler access to the RSW sterile area, there can by no cause of action for negligence as to plaintiff Lisa Dazell. In light of this, plaintiff Randy Dazell's claim for loss of consortium fails as a matter of law. Stone, 373 F.2d at 1132.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. #48) is **DENIED**.

---

[8]Plaintiffs also rely on Charles Klier's affidavit in which Mr. Klier described Kessler as having "an attitude when [Klier] was working with her" at the curb-side check-in podium. (Doc. #54, Exh. 2). The Court finds that a description of Kessler's attitude and conduct prior to the screening process is immaterial to her behavior during the screening process and thereafter.

2. Defendant's Motion for Summary Judgment (Doc. #48) is **GRANTED**.

3.  The Clerk of the Court shall enter judgment in favor of defendant the United States by and through Michael Chertoff, Secretary of Homeland Security, and plaintiffs shall take nothing.

4.  Since the only other defendants were previously dismissed (Docs. #28, #41), the Clerk of the Court shall close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __13th__ day of October, 2005.


JOHN E. STEELE
United States District Judge


Copies:
DCCD